United States District Court
Southern District of Texas
**ENTERED**
December 06, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| **v.** § | **Criminal Case No. 2:20-CR-00953** |
| § | |
| **JAVIER GARZA-FLORES** § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Defendant Javier Garza-Flores is charged by a single-count indictment with illegal reentry into the United States in violation of 8 U.S.C. §§ 1326(a)–(b). (Dkt. No. 5). At the Final Pretrial Conference on April 5, 2021, Garza-Flores waived his right to a jury trial. At that time, all exhibits were pre-marked and admitted without objection. On April 28, 2021, the Court held a bench trial. During the trial, Garza-Flores argued that the Government did not meet its burden of proving he is an alien because he is a United States citizen by virtue of "acquired" citizenship. After the close of trial, the Court stated that it would issue a verdict at a later date. For the following reasons, the Court finds that Garza-Flores is **NOT GUILTY**.

### I.     BACKGROUND

The Court is not required to make specific findings of fact because neither party requested them. *See* Fed. R. Crim. P. 23(c). For purposes of appellate review, however, the Court makes the following limited findings.[1]

---

[1]     The factual statements made herein (except where the Court is discussing a factual dispute) should be considered as findings of fact regardless of any heading or lack thereof. Similarly, the legal conclusions, except where the Court discusses the various competing legal
(continue)

During trial, Garza-Flores argued that he is a United States citizen through "acquired" citizenship.[2] (Dkt. No. 23 at 2). He contends that his father was a United States citizen who was physically present in the United States for the statutorily prescribed period, such that United States citizenship automatically attached to Garza-Flores at birth. As evidence, Garza-Flores presented: (1) his father's certificate of United States citizenship, (Def. Ex. 1); (2) a Mexican certificate of his father's formal acknowledgment that Garza-Flores is his son,[3] (Def. Ex. 2); (3) an affidavit from his paternal aunt stating that Garza-Flores's father was nearly 60 years old when Garza-Flores was born and that his father had been working in the United States during the workweek as a manual laborer since his early teenage years, (Def. Ex. 3); (4) a document certifying that Garza-Flores's father was baptized at the Immaculate Conception Church

---

theories and positions, should be taken as conclusions of law regardless of any label or lack thereof.

[2] The Parties interchangeably use the terms "derivative" and "acquired" to describe Garza-Flores's citizenship-related arguments. This might be because, semantically, acquired citizenship derives from one's parents. But in the immigration law context, "derivative citizenship" and "acquired citizenship" are distinct. "'Acquired' citizenship is automatically obtained from a parent *at birth* while 'derivative' citizenship is transmitted from parent to child *after the child is born*." *United States v. Lewis*, 774 F. App'x 8, 9 n.1 (2d Cir. 2019) (emphasis added); *see also* Richard D. Steel, *Steel on Immigration Law* § 15:4 (2021 ed.); Jennifer Lee Koh, Rethinking Removability, 65 Fla. L. Rev. 1803, 1822 (2013).

Both Parties' briefs focus on former 8 U.S.C. § 1401(a)(7), which governs "Nationals and citizens of the United States *at birth*." (emphasis added). By necessity, therefore, a claim under former Section 1401(a)(7) is a claim for acquired citizenship—not derivative citizenship—because acquired citizenship is obtained at birth. *See Lewis*, 774 F. App'x at 9 n.1. In addition, the current "statute governing derivative citizenship is 8 U.S.C. § 1431." *Gonzalez v. Holder*, 771 F.3d 238, 239 n.1 (5th Cir. 2014). Section 1431 governs "Children born outside the United States and lawfully admitted for permanent residence," and Section 1431 is not the statute Garza-Flores relies on for his citizenship claim. Thus, the Court assumes for the purpose of this Order that the Parties intended to use the immigration term "acquired citizenship."

[3] Garza-Flores was born out of wedlock.

in Brownsville, Texas in June 1916, (Def. Ex. 4); (5) evidence of his father's registration for the draft during World War II, (Def. Ex. 5); and (6) his father's application for a certificate of United States citizenship, stating that his father went "back and forth [between Mexico and the United States] whenever necessary" and that his father "resided in the U.S. about 5 months in 1940," (Def. Ex. 6).

The Government argues that Garza-Flores's citizenship claim is an affirmative defense that shifts the burden of proof to Garza-Flores. (Dkt. No. 26); (Dkt. No. 27 at 1–2). Garza-Flores asserts that the citizenship claim simply negates an element of the charge of illegal reentry, so burden-shifting does not apply. (Dkt. No. 23); (Dkt. No. 25); (Dkt. No. 28). The Parties also dispute the meaning of "physically present" under former 8 U.S.C. § 1401(a)(7).[4] Specifically, they disagree as to whether "physically present" requires "residence." As a final matter, the Court notes that Garza-Flores has a pending Petition for Review of Final Order of Reinstatement of Order Removal at the Fifth Circuit in which he argues he is a United States citizen.[5]

---

[4] Both Parties agree that the current version of the statute, 8 U.S.C. § 1401(g), does not apply because Garza-Flores was born in 1974. (Dkt. No. 19 at 3); (Dkt. No. 23 at 2). The Court agrees. Acquired citizenship is governed by the statute in effect at the time of the applicant's birth. *Gonzalez-Segura v. Sessions*, 882 F.3d 127, 131 (5th Cir. 2018); *United States v. Duron-Caldera*, 737 F.3d 988, 990 n.1 (5th Cir. 2013). The record demonstrates that Garza-Flores was born in 1974. *See, e.g.*, (Gov't Ex. 1); (Def. Ex. 2). Thus, the Court applies the statute as it existed in 1974.

Notably, in 1986, Congress amended the statute to replace the phrase "ten years, at least five" with "five years, at least two." An Act to Amend the Immigration and Nationality Act, and For Other Purposes, PL 99–653 (HR 4444), Pub. L. No. 99–653, § 12, 100 Stat 3655 (1986); *see also Marquez-Marquez v. Gonzales*, 455 F.3d 548, 556 n.14 (5th Cir. 2006). But the reduction from ten to five years "affects only children born on or after November 14, 1986." *Sessions v. Morales*, ____ U.S. ____, ____ n.3, 137 S.Ct. 1678, 1687 n.3, 198 L.Ed.2d 150 (2017).

[5] *Garza-Flores v. Mayorkas*, *appeal docketed*, No. 20-60748 (5th Cir. Aug. 8, 2020).

3

## II.     LEGAL STANDARD

The Court's determination is controlled by the elements articulated in the Fifth Circuit Pattern Jury Instruction for this offense. *See United States v. Rodriguez*, 762 F. App'x 197, 198 (5th Cir. 2019) (per curiam) ("The district court did not abuse its discretion in giving this Court's pattern jury instruction" in a Section 1326 case).  Those elements are:

> *First*: That the defendant was an alien at the time alleged in the indictment;
>
> *Second*: That the defendant had previously been deported, removed, or excluded from the United States;
>
> *Third*: That thereafter the defendant knowingly entered, attempted to enter, or was found in the United States; and
>
> *Fourth*: That the defendant had not received the consent of the Secretary of the Department of Homeland Security or the Attorney General of the United States to apply for readmission to the United States since the time of the defendant's previous deportation.
>
> An "alien" is any person who is not a natural-born or naturalized citizen of the United States.

Fifth Circuit Pattern Jury Instructions (Criminal) § 2.03 (2019); *see also United States v. Esparza*, 678 F.3d 389, 392 (5th Cir. 2012) (articulating the Section 1326 elements and the definition of "alien" in 8 U.S.C. § 1101(a)(3)).

The only element Garza-Flores contests is the first—that he was an alien at the time alleged in the indictment.  *See* (Gov't Ex. 12, Joint Stipulation of Facts).  The Court's consideration of this element hinges on two issues raised by the Parties in the briefing and at trial.  First, what is the burden of proof in a criminal trial regarding a claim of

4

acquired citizenship, and which party bears it? Second, what is the definition of "physically present" under former Section 1401(a)(7)? The Court examines each in turn.

## III.  THE BURDEN OF PROOF

It is elementary that the government must prove each element of an offense in a criminal case beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). A criminal defendant is assumed innocent until proven guilty; he need not affirmatively prove his innocence. *United States v. Walker*, 861 F.2d 810, 812–13 (5th Cir. 1988) (per curiam).

While a criminal defendant bears no burden to prove his innocence, he is entitled to defend himself at trial. There are various ways he can do this. He can attempt to show that the government has not proven each element of an offense beyond a reasonable doubt by, for example, cross examining witnesses, submitting evidence, and arguing that there is, at a minimum, reasonable doubt as to one or more of the elements of the charged offense. *See United States v. Ortiz*, 927 F.3d 868, 873 (5th Cir. 2019). Or he can raise an affirmative defense by showing that even though the government has proved each of the elements of the offense, he has a valid justification or excuse for the otherwise unlawful conduct, rendering him not guilty. *See id.* at 873–74.

When a criminal defendant goes the first route by seeking to negate an element of the charged crime, the government retains the burden of proving that element beyond a reasonable doubt. *See Smith v. United States*, 568 U.S. 106, 110, 133 S.Ct. 714, 719, 184 L.Ed.2d 570 (2013); *Ortiz*, 927 F.3d at 873–74. When going the second route by seeking to "excuse conduct that would otherwise be punishable" but not "controverting any of the

elements of the defense itself, the Government has no constitutional duty to overcome the defense beyond a reasonable doubt." *Smith*, 568 U.S. at 110, 133 S.Ct. at 719 (cleaned up); *see also Ortiz*, 927 F.3d at 873–74. Rather, the defendant "bears the initial burden of production" on an affirmative defense, and the government must negate the defense "[i]f and only if the defendant has met his burden of production." *United States v. Branch*, 91 F.3d 699, 714 n.1 (5th Cir. 1996).

The Government argues that Garza-Flores bears the burden of proving his claim of acquired citizenship. (Dkt. No. 26); (Dkt. No. 27 at 1–2). In response, Garza-Flores contends that he is not required to prove that he has acquired citizenship in a criminal matter in which alienage is an element of the Government's case. (Dkt. No. 23); (Dkt. No. 25); (Dkt. No. 28). This, he asserts, is because his acquired citizenship claim is not an affirmative defense. His claim does not attempt to excuse conduct that would otherwise be punishable. Rather, Garza-Flores seeks only to negate the alienage element of the charge—an element which the Government bears the burden of proving beyond a reasonable doubt. (Dkt. No. 25 at 1–3). The "sole question," Garza-Flores argues, "is not whether [he] is, in fact, a citizen; it is merely whether he has raised a reasonable doubt as to whether he is an alien to the United States." (Dkt. No. 28 at 1). The Court agrees with Garza-Flores.

By raising an acquired citizenship claim, Garza-Flores does not seek to excuse conduct that would otherwise be punishable; he merely seeks to controvert one of the elements of the offense—the element of alienage. *Cf. United States v. Juarez*, 672 F.3d 381, 386 (5th Cir. 2012) (acknowledging that, "[h]ad [the petitioner] been able to establish his

6

derivative citizenship [under Section 1432], it would have been a defense to his conviction because citizenship negates the alienage requirement of . . . 8 U.S.C. § 1326"). Applying the Fifth Circuit's framework for distinguishing between controverting an offense element and affirmative defenses, the Court concludes that Garza-Flores is not required to prove acquired citizenship in this case. *See Ortiz*, 927 F.3d at 873–74; *see also United States v. Ramcharan*, 83 F. App'x 667, 670 (5th Cir. 2003) (per curiam) (affirmative defense must be established by the defendant by a preponderance of the evidence).

The Ninth Circuit was presented with this very question and held that when a criminal defendant raises a derivative citizenship claim[6] to an illegal reentry charge under Section 1326, he faces no burden of production "because he is attempting to negate an element of the offense for which the government bears the burden of proof beyond a reasonable doubt."[7] *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 721–24 (9th Cir. 2011)

---

[6] The citizenship claim in this case was based on 8 U.S.C. § 1401(g), which is the current version of the statute that Garza-Flores brings his acquired citizenship claim under. Thus, while the Ninth Circuit refers to this claim as a "derivative citizenship" claim, it is the same type of "acquired citizenship" claim raised by Garza-Flores in this case. *See supra* note 2.

[7] The Government argues that *Sandoval-Gonzalez* "appears to be unique in its position that derivative citizenship is not an affirmative defense." (Dkt. No. 26 at 3–4). In support of that contention, the Government cites four cases. *Id.* (citing *United States v. Espinoza-Baza*, 647 F.3d 1182 (9th Cir. 2011); *United States v. Williams*, 271 F. App'x 81 (2d Cir. 2008); *United States v. Guerrier*, 428 F.3d 76 (1st Cir. 2005); *United States v. Simpson*, 929 F. Supp. 2d 177 (E.D.N.Y. 2013)). These cases all involve the admissibility of evidence supporting a defendant's citizenship claim. But here, Garza-Flores's evidence in support of his citizenship claim was already admitted during the Final Pretrial Conference—without objection from the Government.

Additionally, none of the cases the Government cites take a position on whether a defendant's citizenship claim is an affirmative defense for which he bears the burden of proof. Passing references in these cases to the citizenship claim as a "defense" do not mean the claim is an affirmative defense on which the defendant bears the burden. *See United States v. Williams*, 836 F.3d 1, 13 (D.C. Cir. 2016) ("An argument that a required element of a crime is missing is sometimes colloquially deemed a 'defense.' But this argument is not really an

(continue)

("[A] criminal defendant faces no burden whatsoever regarding the issue of derivative citizenship in a prosecution for an offense of which alienage is an element.").

Similarly, this case is not about whether Garza-Flores is entitled to acquired citizenship. That is the central issue in Garza-Flores's civil case presently pending before the Fifth Circuit, *Garza-Flores v. Mayorkas*, *appeal docketed*, No. 20-60748 (5th Cir. Aug. 8, 2020). There, Garza-Flores *does* bear the burden of establishing that he is entitled to citizenship. *See Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394–95 (5th Cir. 2006). But the burden of proof in a criminal case is quite different. In this case, the issue is whether Garza-Flores is guilty of illegal reentry. The Government is required to prove his guilt beyond a reasonable doubt, and for this offense, that includes proving beyond a reasonable doubt that Garza-Flores is an alien. Garza-Flores is entitled to defend himself by showing that the Government has not met its burden. He could certainly do that by presenting evidence conclusively establishing his acquired citizenship, but he is not required to do so.

While Garza-Flores does not bear the burden of establishing his citizenship, that does not mean the Government is required to *disprove* all the elements of Garza-Flores's citizenship claim. *Sandoval-Gonzalez*, 645 F.3d at 724. The question is merely whether the

---

affirmative defense at all. Instead, it is more correctly viewed as an argument that the government has failed to prove an element of the crime." (cleaned up)); *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 722 (9th Cir. 2011) ("Seizing on the word 'defense,' the government now argues that derivative citizenship is an affirmative defense for which the defendant must make out a prima facie case. The government reads too much into that term, however."). Thus, these cases are inapplicable to the Court's analysis.

8

evidence and arguments Garza-Flores has proffered in support of his citizenship claim create reasonable doubt as to whether he is an alien. *See id.*

## IV. THE MEANING OF "PHYSICALLY PRESENT"

With the foregoing in mind, Garza-Flores attempts to create reasonable doubt by arguing that he acquired citizenship through his father because his father was a United States citizen and was "physically present" in the United States for the "period or periods" required under former 8 U.S.C. § 1401(a)(7). The Parties do not cite a controlling case defining "physically present." The Court must therefore determine the plain meaning of "physically present" under former 8 U.S.C. § 1401(a)(7).

"The task of statutory interpretation begins and, if possible, ends with the language of the statute." *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 792 (5th Cir. 2021) (quoting *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013)). "When the language is plain, [a court] must enforce the statute's plain meaning, unless absurd." *Id.* (internal quotations omitted). A court must use "the traditional means of statutory interpretation, which include the text itself, its history, and its purpose." *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 739 (5th Cir. 2005) (citation omitted).

Section 1401 outlines a child's acquisition of citizenship from a parent. In 1974—the year Garza-Flores was born—former 8 U.S.C. § 1401(a)(7) provided that a person is a United States national and citizen at his birth if he was

> born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was *physically present* in the United States or its outlying possessions *for a period or periods* totaling not

9

> less than ten years, at least five of which were after attaining the age of fourteen years[.]

(emphases added).

Congress did not define the term "physically present." Thus, the Court must "look first to the [phrase's] ordinary meaning." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407, 131 S.Ct. 1885, 1891, 179 L.Ed.2d 825 (2011). A statutory phrase "has meaning only in context." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 415, 125 S.Ct. 2444, 2449, 162 L.Ed.2d 390 (2005).

Here, the ordinary meaning of "physically present" is being located within the United States. *Cf. Barrios v. Holder*, 581 F.3d 849, 863–64 (9th Cir. 2009) (observing the dictionary definition of "physically present" under 8 C.F.R. § 1240.66(b)(2) as "being in the place in question or under consideration" and holding that a person could not satisfy a "physical presence" requirement because the person was not "corporeally within the borders of the United States"), *abrogated on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1093 (9th Cir. 2013). The statute also plainly states that a person need not be located within the United States on a continuous basis. Rather than simply state "period" or "continuous period" of time, Congress chose the words "period or periods."

This plain and ordinary meaning of former Section 1401(a)(7) is further supported by the text's history and context. Section 1401 did not always require that the citizen-parent be physically present in the United States for a child to obtain citizenship. *See Gonzalez de Lara v. United States*, 439 F.2d 1316, 1317 n.3 (5th Cir. 1971). Indeed, the predecessor to Section 1401(a)(7) included the following language:

> The following shall be nationals and citizens of the United States at birth: . . . (g) A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had ten years *residence* in the United States or one of its outlying possessions, at least five of which were after obtaining the age of sixteen years, the other being an alien[.]

*Id.* (emphasis added). This language was amended in 1952 to replace "residence" with "physically present in the United States . . . for a period or periods totaling not less than ten years[.]" *Id.* The statutory change from "residence" to "physically present" demonstrates an important distinction. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 256–60 (2012) ("[A] change in the language of a prior statute presumably connotes a change in meaning."). In other words, the Court cannot—without more—read "physically present" as synonymous with "residence." The distinction is further supported by the fact that Congress revised the statute but did not merely add "physically present" alongside "residence." Instead, Congress *substituted* "residence" with "physically present." The Court thus presumes that "Congress says what it means and means what it says." *See Simmons v. Himmelreich*, 578 U.S. 621, 627, 136 S.Ct. 1843, 1848, 195 L.Ed.2d 106 (2016). As a result, residence is no longer a requirement—being physically present is.

An individual does not need to be physically present in the United States *continuously*. As Garza-Flores persuasively notes, (Dkt. No. 28 at 2), the text of the statute itself clarifies that physical presence is only necessary for "a period *or periods* totaling not less than ten years," among other requirements. Indeed, if Congress intended for "physically present" to mean "living in the United States and not leaving the country," it

11

could have imposed a "continuous physical presence" requirement, as it has done in at least one other section of the immigration statutes. *See, e.g.*, 8 U.S.C. § 1409(c). But it did not.

## V. APPLICATION

The Court finds that Garza-Flores was born in Mexico in 1974. Garza-Flores's father was a United States citizen from birth, and he was fifty-nine years old when Garza-Flores was born. He legitimated Garza-Flores in a timely manner. The sole issue is whether, prior to Garza-Flores's birth, his father was physically present in the United States for the requisite ten years, of which at least five were after attaining the age of fourteen. Based on all the evidence presented at trial, the Court finds that there is a reasonable doubt on this point. In so doing, the Court is not suggesting that Garza-Flores has proven this point, for that was not his burden as discussed above.

Garza-Flores presented an affidavit by his father's sister, Herminia Becerra, which was admitted into evidence without objection. (Def. Ex. 3). In it, she noted that all the children that Garza-Flores's father had with his wife acquired their citizenship through him. She further testified that from the time that he was a teenager and throughout his life, Garza-Flores's father worked for La Labor in the United States during the weekdays and would usually go home to Tamaulipas for the weekends. The N-600 filled out by Garza-Flores's father reinforces this point stating that he "resided in U.S. about 5 months 1940" and "I go back and forth whenever necessary." (Def. Ex. 6). The Court finds that based on all the evidence admitted at trial, Garza-Flores has created a reasonable doubt as to whether his father was physically present in the United States for a period of time

totaling not less than ten years, at least five of which were after attaining the age of fourteen years.

## VI. CONCLUSION

The Court, therefore, finds that there is a reasonable doubt as to whether Garza-Flores was an alien at the time alleged in the indictment. As a result, the Court finds the Defendant Javier Garza-Flores **NOT GUILTY** of the sole count in the indictment in this case.

It is SO ORDERED.

Signed on December 5, 2021.

*[signature: Drew B. Tipton]*

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**